IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SUZANN ROSS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:18-cv-00541-O |
| | § | |
| HARTFORD LLOYD INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Hartford Lloyds Insurance Company's Motion for Summary Judgment and Brief in Support (ECF Nos. 16, 17), filed April 22, 2019; Plaintiff's Response to Defendant's Motion for Summary Judgment and Brief in Support (ECF Nos. 18, 19); and Defendant Hartford Lloyds Insurance Company's Reply Brief in Support of Motion for Summary Judgment (ECF No. 21). On June 26, 2019, the Court held a hearing on the motion. Having considered the motion, response, reply, oral argument of counsel at the June 26, 2019 hearing, briefing, appendices, record, and applicable law, and for the reasons that follow, the motion is **DENIED IN PART** and **GRANTED IN PART**.

I.  BACKGROUND

This is an insurance coverage dispute. Plaintiff Suzann Ross ("Plaintiff" or "Ross") is an insurance policyholder who submitted a claim to Defendant Hartford Lloyds Insurance Company ("Defendant" or "Hartford") for damages to her home following a windstorm. Hartford issued a payment to Ross to cover the cost of repairs, including for that portion of her roof that was

1

damaged. Ross, however, contends that Hartford undervalued her claim for interior and exterior damage, and additionally is obligated under the policy to pay the cost of replacing her entire roof, rather than only the damaged portions. Hartford argues it has fulfilled its obligations under the insurance policy and moves for summary judgment on all claims.

Unless otherwise noted, the facts are undisputed. When disputed, the facts are viewed in the light most favorable to Plaintiff, the nonmoving party. Plaintiff held a Hartford homeowners insurance policy, Policy No. 55RBA491486 (the "Policy"), effective from April 1, 2016, to April 1, 2017, for property located at 2209 Shady Meadow Court, Arlington, Texas 76013 (the "Property"). Def.'s App. Supp. Mot. Summ. J. Ex. B (Policy), App. 1-43 (ECF No. 17-2). The Policy provides, in pertinent part:

COVERAGE A (DWELLING)

> We insure against all risks of physical loss to the property described in Section I Property Coverage, Coverage A (Dwelling), unless the loss is excluded in Section I Exclusions.

*Id.* Ex. B (Policy), at App. 4. Coverage A (Dwelling) provides:

> We cover the dwelling on the residence premises shown in the declarations page including structures attached to the dwelling.

*Id.* Ex. B (Policy), at App. 6.

On June 15, 2016, a windstorm caused a tree to fall onto a corner of Plaintiff's home, causing damage to the Property. On June 16, 2016, Plaintiff made a claim and demand for payment under the Policy. Hartford assigned Ryan Parker ("Parker") to adjust the claim. On July 11, 2016, at Hartford's request, James Boddy of Specialty Restoration of Texas ("SRT"), inspected the Property and confirmed damage to a portion of the roof, the garage walls and ceiling, and the hobby room walls and ceiling. SRT issued an estimate of damages in the amount of $7,090.72,

which included replacement of 1.98 squares of damaged roof tile. *Id.* Ex. F (SRT Estimate), at App. 85-87.

On July 21, 2016, Parker sent Plaintiff a copy of the SRT estimate, as well as a letter, stating:

> We have received your claim request for the loss on June 16, 2016.
>
> After reviewing the details of your policy, including your Dwelling coverage deductible of $7,400.00, we find that the loss is below your deductible amount. Unfortunately, since the amount of your loss is below the deductible amount, we are unable to pay this claim for you.

Pl.'s App. Supp. Summ. J. Resp. (June 16, 2016 Correspondence), App. 190, ECF No. 20.

On September 27, 2016, contractor Chris Brown with Ramone Roofing called Parker to state that he had been contacted to perform roof repairs on the Property, but he was unsure how to proceed because the tiles on the roof were no longer manufactured. On October 4, 2016, Parker spoke with James Pendergrass of DFW Premium Roofing, who similarly informed him that the tiles on Plaintiff's roof were out of production.

Plaintiff obtained numerous repair estimates, all of which included replacement of the entire roof. She provided these estimates to Hartford. DFW Premium Roofing estimated the cost to replace the entire roof at $25,525.00. Another contractor, ERC Roofing, estimated the cost to repair all Plaintiff's damaged property, as the damaged and undamaged portions of the roof, at $46,552.

On November 7, 2016, Plaintiff requested a reinspection of the Property. On December 14, 2016, Parker noted in the claim file that Plaintiff stated she had framing damage that had not been accounted for in SRT's original estimate. After receiving this information, Hartford retained Donan Engineering Company, Inc. ("Donan Engineering") to reinspect the Property. On December 25, 2016, I. Nathan Austin ("Austin") of Donan Engineering reinspected the Property

3

"to determine the extent of damage due to the tree impact and to provide repair recommendations." Def.'s App. Supp. Mot. Summ. J. Ex. G (Engineering Report), App. 249. In his report, dated January 3, 2017, Austin confirmed that "tree impact caused structural damage to the roof framing and damage to the concrete tiles above the garage and hobby room." *Id.* Ex. G (Engineering Report), App. at 252. He indicated that "[t]wo ceiling joints, the northeast hip rafter, a north rafter, and four rafter jacks" were damaged, and that "[a]pproximately 385 square feet of roof area above the garage and hobby room [were] affected by the falling tree." *Id.* Ex. G (Engineering Report), App. at 252. As part of his repair plan, Austin opined that the damaged portions of the roof could be repaired without replacing the entire roof. Specifically, he concluded that "[u]p to 385 square feet of concrete roof tiles will need to be removed to facilitate repairs, especially the replacement of the northeast hip rafter, four hip jacks, and the north rafter." *Id.* Ex. G (Engineering Report), App. at 251-52. He also confirmed the interior damage including displaced ceiling drywall in the garage and hobby room, stains on the drywall above the east-facing window, and that drywall below the garage ceiling was punctured and scraped between two studs. Austin "recommended that a licensed contractor be retained to perform the repairs." *Id.* Ex. G (Engineering Report), App. at 251-52. Neal Amendola, Hartford's outside claims representative, reviewed Austin's report on January 11, 2017, and forwarded it to SRT with additional notes for a revised estimate. On January 24, 2017, Hartford sent Plaintiff a revised estimate from SRT based on Austin's engineering report, increasing SRT's estimate to $9,109.30.

In early March 2017, Hartford reassigned the claim from Parker to Amber Klecka ("Klecka"). Klecka initiated procedures to make a payment to Plaintiff because SRT's revised estimate of $9,109.30 exceeded the wind/hail deductible by $1,709.30. On March 9, 2017, Hartford paid Plaintiff $1,709.30.

4

On March 21, 2017, Hartford sent Plaintiff another copy of the engineering report, explaining that the roof could be repaired without replacing the entire roof and that payment had been made on the current estimate. Plaintiff then lodged an executive complaint with Hartford stating that matching tiles were not available. In response, Hartford provided Plaintiff with a kit to submit a sample of the tile to a pricing and matching company, ITEL, Inc., to confirm whether matching tiles were available. The ITEL report, received in April 2017, identified three locations where replacement tiles could be obtained, one location in Texas and two in California. It is disputed whether the number of tiles available at these locations would be sufficient to replace the damaged tiles at the Property.

Ultimately, even though Plaintiff had not done any repairs to the Property, Hartford decided to pay the replacement cost value for replacement of the two affected roof surfaces. Klecka obtained a revised estimate from SRT for the expanded scope of repair. The revised SRT estimate of $14,352.81(replacement cost value) included replacement of the two affected slopes of the roof and the exterior and interior damage. *Id.* Ex. K (Final SRT Estimate), App. at 498-507.[1] After accounting for the $7400 deductible and the prior payment of $1,709.30, Hartford issued a payment of $5,243.51 to Plaintiff on May 2, 2017.

On November 15, 2017, Plaintiff informed Hartford that she was not cashing the two checks because they did not cover her loss. On June 4, 2018, Plaintiff filed this lawsuit in Texas

---

[1] Plaintiff moves to strike and objects to the final SRT estimate. She contends it is inadmissible because Hartford has not submitted an affidavit or declaration "proving up the SRT estimate." Pl.'s Summ. J. Resp. Brief 18. Alternatively, Plaintiff requests that the Court find "that the SRT bare estimate is insufficient to support summary judgment." *Id.* at 18-19. In response, Hartford contends that the final SRT estimate is authenticated as a business record of Hartford through the Declaration of Hartford's counsel, and Plaintiff has not challenged the predicate business records elements. *See* Def.'s App. Supp. Mot. Summ. J. Ex. L (Declaration of Martin R. Sadler ¶ 14). Having considered Plaintiff's objection and Defendant's response, and in light of Plaintiff's failure to challenge Mr. Sadler's Declaration authenticating the final SRT estimate as a business record of Hartford, the Court **overrules** Plaintiff's objection to the admissibility of the final SRT estimate and **denies** her motion to strike.

5

state court alleging that Hartford failed to honor contractual obligations it owed her under the Policy, and that in adjusting her claim, it breached Chapters 541 and 542 of the Texas Insurance Code, its duty of good faith and fair dealing, and the Texas Deceptive Trade Practices Act ("DTPA"). Hartford subsequently removed the case to this Court and now moves for summary judgment on all claims, arguing that is has fulfilled its obligations, as a matter of law, under the Policy, and that its adjustment of the claim has been prompt, thorough, and fair.

On June 26, 2019, the Court held a hearing on Defendant's Motion for Summary Judgment. At the hearing, the parties confirmed that they do not dispute that the windstorm event causing damage to Plaintiff's home is a covered cause of loss under the Policy, and that various exclusions under the Policy are not applicable to this circumstance. In addition, when questioned by the Court, counsel for Plaintiff clarified that his client was suing for the actual cash value of her damages, not the replacement cost value.[2]

## II.   LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[2] The Loss Settlement provision of the Policy states, "We will pay only the actual cash value of the damaged building structure(s) until repair or replacement is completed . . . Upon completion of repair or replacement, we will pay the additional amount claimed under replacement cost coverage[.]" Def.'s App. Supp. Mot. Summ. J. Ex. B (Policy), App. 11-12. It is undisputed that Plaintiff has not completed repairs. Under the express terms of the Policy, Plaintiff is only entitled to recover on a replacement cost basis after she has completed repairs. Nevertheless, the parties devote a great deal of time to debating whether tiles "of like kind and quality" exist or whether "matching" is required. The Court recognizes that some courts that have found matching may be necessary have expressed concern that the plaintiff may not be made whole if the repaired or replaced portions of the insured's property do not match the undamaged portions. *See, e.g.*, *Collins v. Allstate Ins. Co.*, 2009 WL 4729901 (E.D. Pa. Dec. 10, 2009) (denying summary judgment based on testimony that failure to match would result in a different appearance and not place the plaintiff in the position they were prior to the loss). The concern in *Collins* does not arise on the undisputed facts in this case, however, as Plaintiff only seeks the actual cash value coverage and, for now, has chosen not to repair the damaged portions of the Property. Unless and until replacement or repair is completed, there is no concern that two different types of roof tiles will detrimentally affect the value of the home.

FED.. R. CIV. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When reviewing the evidence on a motion for summary judgment, the Court must resolve all reasonable doubts and draw all inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The Court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations—such that "reasonable minds could differ as to the import of the evidence"—the Court must deny the motion. *Id.* at 250.

### III. ANALYSIS

#### A. Breach of Contract

In the Amended Complaint, Plaintiff alleges that Hartford's refusal to pay the full value of her claim for interior and exterior damage to the Property, including replacement of the entire roof—damaged and undamaged—constitutes a breach of contract. To prevail on a breach of contract claim under Texas law, a plaintiff must prove: (1) there was a valid contract; (2) plaintiff performed his or her obligations under the contract; (3) defendant breached the contract; and (4) plaintiff suffered damages as a result of defendant's breach. *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

In support of its motion for summary judgment, Hartford points to Austin's engineering report, the final SRT estimate of $14,352, and the lack of any controverting evidence, and contends that it has met all its obligations under the Policy and paid the full value of Plaintiff's claim. With respect to Plaintiff's allegation that the Policy required it to pay the full value of replacing the entire roof, rather than just the damaged tiles on the portion of the roof impacted by the falling tree, Hartford contends that the Policy language is unambiguous and obligates it to repair or replace "only specific roof tiles [that] were physically damaged in the occurrence that is the basis of Plaintiff's claim." Def.'s Summ. J. Mot. 1 (ECF No. 16).

There are no disputed facts concerning the structural damage that was caused by the windstorm and the falling tree. It is also undisputed that Plaintiff has not performed any repairs at the Property and has not used any of the money Hartford has paid her to repair the exterior or interior damage. The legal questions before the Court with respect to Plaintiff's breach of contract claim are: (1) whether the Policy requires Hartford to cover the cost to replace the entire roof or only the damaged roof tiles; and (2) whether, apart from the damage to the roof, Plaintiff has raised a genuine dispute of material fact that Hartford undervalued her claim as to the remaining exterior and interior damage to the Property. To resolve these questions, the Court will first consider the proper construction of the relevant Policy provisions and then address whether Plaintiff has raised a genuine dispute of material fact that Hartford failed to pay the full value of her claim.

### 1. Contract Construction

State law rules of contract construction govern in diversity cases such as this one. *Amica Mut. Ins. Co. v. Moak,* 55 F.3d 1093, 1095 (5th Cir. 1995). In Texas, insurance contracts are subject to normal rules of contract construction. *Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345-46 (5th Cir. 2008) (citing *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520

8

(Tex, 1995)); *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). Texas courts construe the language according to "the ordinary, everyday meaning of the words to the general public." *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006). The focus of construction is to ascertain the parties' intent as expressed in the policy. *CBI Indus.*, 907 S.W.2d at 520.

The determination whether a contract term is ambiguous is a matter of law. *D.E.W., Inc. v. Local 93, Laborers' Int'l Union,* 957 F.2d 196, 199 (5th Cir. 1992). A term is ambiguous only if it is susceptible to more than one reasonable meaning, and mere disagreement between the parties about the correct interpretation of the term will neither render it ambiguous nor transform the issue of law into one of fact. *Id.* The court will not strain to find an ambiguity where none exists. *Ramsay v. Md. Am. Gen. Ins. Co.,* 533 S.W.2d 344, 346 (Tex. 1976). If the contract is subject to a "certain or definite legal meaning or interpretation," it is not ambiguous, and the court will construe its meaning as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983).

Unlike other contracts where ambiguous language creates a fact question, insurance policies are analyzed with a presumption in favor of coverage. *State Farm Fire & Cas. Co. v. Reed,* 873 S.W.2d 698, 701 (Tex. 1993). When a policy term is ambiguous, the court will construe the term in favor of the insured. *Toops v. Gulf Coast Marine Inc.*, 72 F.3d 483, 486 (5th Cir. 1996) (quoting *Adams v. John Hancock Mut. Life Ins. Co.,* 797 F. Supp. 563, 567 (W.D. Tex. 1992)). When construing a policy term that excludes or limits coverage, a court must adopt any reasonable interpretation of the exclusion urged by the insured, even if the interpretation provided by the insurer appears more reasonable or a more accurate reflection of the parties' intent. *Id.* These rules of construction only apply, however, when the terms of the policy are ambiguous. *Ranger Ins. Co. v. Bowie,* 574 S.W.2d 540, 542 (Tex. 1978).

The insured first bears the burden of proving that a loss is encompassed by the basic coverage terms of the relevant policy; if it is, the insurer may then demonstrate the applicability of an exclusion to coverage. *Fiess v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004).

### 2. The Operative Policy Provisions

As previously stated, the Policy provides, in pertinent part:

COVERAGE A (DWELLING)

> We insure against all risks of physical loss to the property described in Section I Property Coverage, Coverage A (Dwelling), unless the loss is excluded in Section I Exclusions.

Def.'s App. Supp. Mot. Summ. J. Ex. B (Policy), App. 4. In turn, Coverage A (Dwelling) provides:

> We cover the dwelling on the residence premises shown in the declarations page including structures attached to the dwelling.

*Id.* Ex. B (Policy), at App. 6.

### 3. The Roof

In support of its motion for summary judgment, Hartford argues that the Policy language quoted directly above unambiguously "obligates [it] to pay for 'physical loss' to the property, which in this case is the damage caused by the tree falling across the roof over the garage and hobby room, not the entire roof which was largely undamaged." Def.'s Summ. J. Br. 8-9 (ECF No. 17). In her response, Plaintiff offers nothing in the way of contractual interpretation, contending more generally that "Hartford promised to pay for physical loss to the Property caused by a covered peril. Hartford failed to fully pay the damages caused to the Property." Pl.'s Summ J. Resp. Brief 18 (ECF No. 19). At the June 26, 2019 hearing, when asked by the Court to identify the Policy provision to support Plaintiff's contention that Hartford was required under the Policy to replace the entire roof rather than just that portion damaged, counsel for Plaintiff pointed to the general language of the Policy covering "physical loss to the property."

The Policy does not define "physical loss." Applying the principles governing contractual interpretation set forth previously, the Court looks to the ordinary meaning of the words in an attempt to ascertain the parties' intent as expressed in the Policy. The parties provide the Court little in the way of case law and the Texas Supreme Court has yet to provide a definition for "physical loss" in the context of a similar policy. However, Couch on Insurance states,

> As with any insurance, property insurance coverage is "triggered" by some threshold concept of injury to the insured property. Under narrow coverages like theft, the theft is itself the trigger. Under most coverages, however, the policy specifically ties the insurer's liability to the covered peril having some specific effect on the property. In modern policies, especially of the all-risk type, this trigger is frequently "physical loss or damage" but may be any of several variants focusing on "injury," "damage," and the like.
>
> \*\*\*
>
> The requirement that the loss be 'physical,' given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by ***a distinct, demonstrable, physical alteration of the property***.

10A Couch on Ins. § 148:46 (3d ed. 2010) (emphasis added).

Similarly, the Merriam-Webster Dictionary defines "physical" as "having material existence: perceptible especially through the senses," and defines "loss" as "destruction, ruin" and "the amount of an insured's financial detriment by death or damage that the insurer is liable for." Merriam Webster Dictionary, http://www.merriam-webster.com/dictionary (last visited July 2, 2019). "Physical" is also defined as "of, relating to, or involving material things; pertaining to real, tangible objects[.]" 10A Couch on Ins. § 148:46 (quoting Black's Law Dictionary (10th ed., 2014)).

In the present case, it is undisputed that the windstorm caused a tree to fall on a portion of Plaintiff's roof above the garage and hobby room and caused a "distinct, demonstrable, physical

11

alteration" of approximately 385 square feet of roof tiles, but no "demonstrable, physical alteration" to the remainder of the roof, which remained intact. Thus, these definitions of the ordinary meaning of "physical" and "loss" support Hartford's contention that under the express provisions of the Policy, it is only obligated to pay for repair of the physically damaged tiles, and not the remaining undamaged portion of the roof.

In addition, other provisions in the Policy reinforce the Court's reading of the Policy language as requiring Hartford to pay to repair or replace the physically damaged tiles, and not the entire roof. With respect to repair obligations, the Policy provides:

> **Loss to a Pair or Set**. In case of loss to an item which is part of a pair or set, the measure of loss shall be a reasonable and fair proportion of the total value of the pair or set. . . . Such loss will not be considered a total loss of the pair or set.

Def.'s App. Supp. Mot. Summ. J. Ex. B (Policy), App. 12.

This provision further evidences that the parties intended to provide coverage for only tangible physical loss to the roof and that the entire roof would not be considered a total loss in the event only certain portions were damaged. In her response, Plaintiff makes no attempt to reconcile this unambiguous language with her proposed interpretation that Hartford has an obligation to pay for the entire roof, damaged and undamaged, rather than that portion physically damaged; nor does Plaintiff point to any language in the Policy requiring Hartford to pay for property that has not been subjected to a physical loss.

Reading the Policy in its entirety, and based on the ordinary meaning of its terms, the Court concludes that, contrary to Plaintiff's argument, "physical loss" under the Policy cannot fairly be construed to mean physical loss in the absence of physical damage.[3] Accordingly, the Court rejects

---

[3] Other provisions in the Policy similarly support the Court's interpretation. For example, under the Loss Settlement provisions of the Policy, with respect to replacement cost coverage, one option allowed to the insurer is to make a payment for the cost "to repair or replace ***that part of the building structure damaged*** with material of like kind and quality and for the same use and occupancy on the same premises[.]" Def.'s

12

as unreasonable Plaintiff's interpretation of the Policy language as requiring Hartford to repair those portions of the roof that have not been physically damaged by the falling tree.

Having concluded that the unambiguous Policy language obligates Hartford to pay for repair or replacement of the damaged tiles only, and not the entire roof, the Court turns to whether Plaintiff has raised a genuine dispute of material fact that Hartford undervalued the cost to repair the damaged portion of the roof. Hartford relies on Austin's engineering report in which he concluded that the roof could be repaired short of full roof replacement and on SRT's final estimate, in which it estimated that the cost to repair and replace the two slopes of the roof containing damaged tiles was $8,261.70. *Id.* Ex. K (Engineering Report), App. at 502; Ex. K (Final SRT Estimate), App. at 500-501. In opposition, Plaintiff relies on various estimates to repair the entire roof, which she asserts are sufficient to raise a genuine dispute of material fact. The Court disagrees. Plaintiff has not provided any competing engineering report or any competing repair estimate limited to repairing only the damaged portion of the roof, the scope of roof repair required under the unambiguous terms of the Policy.

Further, in her opposition brief, Plaintiff also contends that the SRT estimate to replace the damaged portions of the roof in the amount of $8,261.70 provides "no monies for decking, radiant barriers, sheathing or batten even though Mr. Parker was told that these were needed to comply with city code." Pl.'s Summ. J. Resp. Brief 20 (ECF No. 19). In its reply brief, Hartford argues:

> None of Plaintiff's contractors has identified or produced a specific code provision for the claimed elements and no code requirement was included in Plaintiff's Response. And, Hartford's payment was made on an RCV basis for the full replacement of two roof slopes, a scope that exceeds the requirement to repair the loss caused by the damage event. Plaintiff has not submitted summary judgment

---

App. Supp. Mot. Summ. J. Ex. B (Policy), App. 11 (emphasis added). While the Court recognizes that replacement cost coverage is not strictly applicable in this case, given that Plaintiff has not done any repairs, *see supra* note 2, this provision supports the Court's analysis of the relevant Policy provisions because it contemplates that the insurer's duty to repair is limited to that part of the building structure damaged, and does not extend to undamaged parts of any structure.

evidence that the purported requirements would render the required repairs more costly than the amount paid.

Def.'s Reply 5 (Doc. 21). The Court agrees. The Court has combed through the evidence Plaintiff submitted in response to Defendant's Motion for Summary Judgment and has found no evidence of a specific code provision for the claimed elements. In addition, the Court notes that in the Amended Complaint, Plaintiff makes no allegations concerning Hartford's failure to comply with any building code provisions.

For these reasons, the Court concludes that Plaintiff has failed to raise a genuine dispute of material fact that Hartford undervalued its cost estimate to repair or replace the damaged portions of the roof. Accordingly, the Court will grant Hartford's motion for summary judgment as to Plaintiff's breach of contract a.claim rising from Hartford's decision to pay Plaintiff the cost to repair or replace only the two roof slopes containing the damaged roof tiles.

### 4. Remaining Exterior and Interior Damages

As previously described, in addition to noting the damage to approximately 385 square feet of tile above the garage and hobby room caused by the falling tree, Austin confirmed structural damage to "[t]wo ceiling joints, the northeast hip rafter, a north rafter, and four rafter jacks." *Id.* Ex. G (Engineering Report), App. at 252. He also confirmed interior damage including displaced ceiling drywall in the garage and hobby room, stains on the drywall above the east-facing window, and that drywall below the garage ceiling was punctured and scraped between two studs. Hartford contends that, based on Austin's engineering report, the final SRT estimate in the amount of $14,352, and the lack of any controverting evidence, it has met all its obligations under the Policy and paid the full value of Plaintiff's claim relating to the remaining exterior and interior damage.

In response, Plaintiff contends that genuine disputes of material fact remain because of the discrepancies in the various estimates for repair of the interior and the rafters. Viewing all

14

evidence in the light most favorable to Plaintiff, the Court agrees. The final SRT Estimate upon which Hartford based its payment provides for $2,166.61 to repair interior rooms and $377.47 to repair damaged rafters. *Id.* Ex. K (Final SRT Estimate), App. at 500-501. Plaintiff has provided the Court with an estimate from LASCO Remodeling estimating that it will cost $4,881.15 to repair the interior damage and $5,498.64 to repair the rafters. Pl.'s App. Supp. Summ. J. Resp. (LASCO Remodeling Estimate), App. 327. DFW Premium Roofing estimates it will cost $2500 to repair the rafters. *Id.* (DFW Premium Roofing Estimate), App. at 259.

The Court concludes that these competing estimates to repair the same damages are sufficient to raise a genuine dispute of material fact as to whether Hartford breached the Policy by undervaluing Plaintiff's claims relating to interior damage and damage to the rafters. Hartford, in its reply brief, argues that these discrepancies are due to Plaintiff's failure to mitigate damages. In the absence of any evidence, however, the Court concludes that the damages, if any, caused by Plaintiff's alleged failure to mitigate her damages, is a fact question for the jury. Accordingly, the Court will deny Hartford's motion for summary judgment on Plaintiff's breach of contract claim with respect to Hartford's payment for repair of the interior and the rafters damaged by the falling tree.

### B. Plaintiff's Extracontractual Claims

In addition to her breach of contract claim, Plaintiff alleges in the Amended Complaint that, in adjusting her claim, Hartford breached Chapters 541 and 542 of the Texas Insurance Code, its duty of good faith and fair dealing, and the Texas Deceptive Trade Practices Act ("DTPA"). Hartford has moved for summary judgment on Plaintiff's extracontractual claims.

### 1. Claims under Chapter 542 of the Texas Insurance Code

Chapter 542 of the Insurance Code, known as the Texas Prompt Payment of Claims Act, "sets deadlines for insurers to process and pay claims, and it penalizes delay." *Barbara Technologies Corp. v. State Farm Lloyds*, __ S.W.3d __ (Tex. 2019) (citing Tex. Ins. Code § 542.054), 2019 WL 2666484, at *1 (Tex. June 28, 2019). Plaintiff alleges a violation of section 542.058 of the Texas Insurance Code, which provides that an insurer shall pay damages, with interest, and attorney's fees if an insurer delays payment of a claim for longer than 60 days. Tex. Ins. Code § 542.058. Hartford argues it is entitled to summary judgment because Plaintiff has no evidence that it violated section 542.058.

The insured bears the burden to establish its right to Chapter 542 remedies. *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004). To establish that right, the insured must prove that "(1) a claim was made under an insurance policy, (2) the insurer is liable for the claim, and (3) the insurer failed to follow one or more sections of the prompt-payment statute with respect to the claim." *United Nat'l Ins. Co. v. AMJ Invs., LLC*, 447 S.W.3d 1, 13 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd).

Viewing all evidence in the light most favorable to Plaintiff, the Court concludes that she has raised a genuine dispute of material fact that Hartford violated section 542.058(a) of the Texas Insurance Code. Here, the summary judgment record shows that on March 9, 2017, Hartford paid Plaintiff $1,709.30, and on May 2, 2017, Hartford paid Plaintiff $5,243.51. The date Hartford had all the information required under section 542.055 and whether more than sixty days passed prior to payment is disputed. Accordingly, as fact issues remain, the Court will deny Hartford's Motion for Summary Judgment on Plaintiff's claim that it violated Chapter 542 of the Texas Insurance Code.

## 2. Breach of the Duty of Good Faith and Fair Dealing

Plaintiff alleges that Hartford breached its common law duty of good faith and fair dealing by initially denying her claim, inadequately adjusting her claim, and by failing to conduct a reasonable investigation. Hartford contends that it is entitled to summary judgment on Plaintiff's common law bad faith claim because there was no breach of contract, and even had there been, there was a bona fide dispute about coverage.

Under Texas law, "[a]n insurer has a duty to deal fairly and in good faith with its insured in the processing and payment of claims." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995). An insurer breaches this duty of good faith and fair dealing "if the insurer knew or should have known that it was reasonably clear that the claim was covered," but denies or unreasonably delays payment of the claim. *Universe Life Ins. Co. v. Giles*, 950 S. W.2d 48, 55-56 (Tex. 1997). However, absent a breach of contract, the insured cannot maintain a common law bad faith claim in Texas unless the insurer "commit[s] some act, so extreme, that would cause injury independent of the policy claim" or "fails to timely investigate the insured's claim." *Stoker*, 903 S.W.2d at 341. "Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998).

Here, the summary judgment evidence, even viewed in the light most favorable to Plaintiff, demonstrates only a bona fide dispute about the amount necessary to compensate Plaintiff for covered damage to her home. *See Simmons*, 963 S.W.2d at 44 ("Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith.").

Nor has Plaintiff raised a fact issue on the question of whether Hartford failed to timely investigate her claim. Within 15 days of receiving notice of a claim, insurers are required to acknowledge receipt of the claim, commence investigation of the claim, and request items and

17

forms "that the insurer reasonably believes, at that time, will be required from the claimant." Tex. Ins. Code § 542.055(a)(1)-(3). In this case, undisputed summary judgment evidence shows that Hartford acknowledged receipt and commenced an investigation of the claim within the prescribed 15-day window.

Because the summary judgment evidence demonstrates only a bona fide dispute about the amount necessary to compensate Plaintiff for covered damage to the Property and Plaintiff has not raised a fact issue on the question of whether Hartford failed to timely investigate her claim, the Court will grant Hartford's Motion for Summary Judgment on Plaintiff's claim that it breached its common law duty of good faith and fair dealing.

### 3. Bad Faith Claims Under Texas Insurance Code and DTPA

Plaintiff alleges in her Amended Complaint that Hartford engaged in various statutorily prohibited acts, including wrongfully denying her claim, initially misrepresenting to her that her claim was not covered, failing to settle the claim in good faith, and failing to conduct a reasonable investigation. Hartford moves for summary judgment on these claims.

Under Texas law, an individual damaged by "unfair method[s] of competition or unfair or deceptive act[s] or practice[s] in the business of insurance" may bring a cause of action under the Texas Insurance Code. Tex. Ins. Code § 541.151. "The prohibited conduct includes 'failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear.'" *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 860-61 (5th Cir. 2003) (quoting Tex. Ins. Code § 541.151)). A violation of Chapter 541 of the Texas Insurance Code is also a violation of the DTPA. Tex. Bus. & Com. Code § 17.50(a)(4).

"Texas law holds that extra-contractual tort claims pursuant to the Texas Insurance Code and the DTPA require the same predicate for recovery as a bad faith claim under a good faith and fair dealing violation." *Broxterman v. State Farm Lloyds*, 2016 WL 482882, at *2 (E.D. Tex. Feb. 4, 2016). "When an insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either statutory claim." *O'Quinn v. Gen. Star Indem. Co.*, 2014 WL 3974315, at *8 (E.D. Tex. Aug. 5, 2014).

As the Court concluded above, there is no merit to Plaintiff's bad faith claim given that she failed to present evidence of anything other than a bona fide dispute about the amount necessary to compensate Plaintiff for covered damage to the Property and has not raised a fact issue on the question of whether Hartford failed to timely investigate her claim. As a result of these same failings, there can be no liability under Plaintiff's Chapter 541 and related DTPA claims. *See O'Quinn*, 2014 WL 3974315, at *8.

### 4. Misrepresentation

Plaintiff alleges Hartford is liable for misrepresentation. To maintain a misrepresentation claim, a plaintiff must substantively plead a misrepresentation that was a producing cause of his actual damages. Tex. Bus. & Com. Code § 17.50(a). Here, Plaintiff has neither alleged nor adduced summary judgment evidence demonstrating "some specific misrepresentation by the insurer or agent about the insurance" that was a producing cause of her alleged damages, as required by section 17.50(a) of the Texas Business and Commerce Code. Accordingly, the Court will grant summary judgment in Hartford's favor on this claim.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES IN PART** and **GRANTS IN PART** Defendant Hartford Lloyds Insurance Company's Motion for Summary Judgment (ECF No. 16). Specifically, with respect to Plaintiff's breach of contract claim, the Court concludes that Plaintiff has raised a genuine dispute of material fact that Hartford undervalued her claim for interior damage and for the damaged rafters but has failed to raise a genuine dispute of material fact sufficient to defeat summary judgment as to the remainder of her breach of contract claim. Accordingly, the Court **DENIES** Defendant's Motion for Smmary Judgment on Plaintiff's breach of contract claim related to the amount it owes her under the Policy for interior damages and damages to the rafters, and **GRANTS** Defendant's Motion for Summary Judgment on the remainder of Plaintiff's breach of contract claim. With respect to Plaintiff's extracontractual claims, the Court **DENIES** Defendants' Motion for Summary Judgment on Plaintiff's claims under Chapter 542 of the Texas Insurance Code and **GRANTS** Defendants' Motion for Summary Judgment on all remaining extracontractual claim.

**SO ORDERED** this **4th day** of **July, 2019.**

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**